The **CITIZEN'S NATIONAL BANK OF WACO**, Trustee, Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 26796.

United States Court of Appeals
Fifth Circuit.

Oct. 3, 1969.

**676**

Ernest Morgan, U. S. Atty., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Jonathan S. Cohen, Lee A. Jackson, Stanley L. Ruby, Attys., Dept. of Justice, Washington, D. C., Robert L. Trimble, Atty., Tax Div., Dept. of Justice, Fort Worth, Tex., Harry Marselli, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

J. Robert Sheehy, Robert H. Nielsen, Sheehy, Jones, Cureton, Westbrook & Lovelace, Waco, Tex., for plaintiff-appellee.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

GOLDBERG, Circuit Judge:

In this tax case we are confounded by the jargon of the regulations, unassisted by guiding case law, and confronted with an enacting environment singularly unilluminating. The issue presented is whether for the purpose of determining the holding periods of several trusts, the taxpayer-trustee is entitled to tack the settlors' holding periods to those of the trusts.

The settlors acquired all of the capital stock of Bosque Investment Company in 1950. Several years later, they borrowed $500,000, pledging this stock as collateral for the loan. Shortly afterwards they created trusts for each of their children and transferred to the trusts all of the capital stock of Bosque.

At the time of the transfer to the trusts, the assets of Bosque as well as its capital stock had a fair market value of $714,-601. The stock was encumbered by the liens securing the settlors' indebtedness of $500,000. This debt was assumed by the trusts. The cost basis of the stock in the hands of the settlors was $498,-468.

The settlors reported the transfer of the stock to the trusts on their 1961 income tax returns and treated the difference between the indebtedness assumed by the trusts ($500,000) and their basis ($498,468) as long term capital gain, and paid the tax due thereon. The settlors also filed gift tax returns, reporting as gifts the excess of the total value of the property over the amount of the indebtedness transferred ($214,601).

Less than six months after the settlors transferred the Bosque stock to the trusts, Bosque was liquidated, and its assets were distributed to the trusts. On the 1961 tax return, each trust reported its share of the fair market value of the assets received in exchange for the stock, deducted its basis, and reported the gain as long term capital gain. In each trust's return the Bosque stock was shown to have been acquired by the trust on the date the stock was acquired by the settlors.

The Commissioner, however, treated the trusts' capital gain as short term on the theory that the trustee could not tack the settlors' holding periods to those of the trusts and, therefore, the trusts' holding periods were less than six months. The taxpayer paid the deficiency and sued for a return of the excess so paid. The court below held that the trustee was entitled to tack the holding periods of the settlors to the holding periods of the trusts, and the government appeals from that determination. Agreeing with the district court, we affirm.

---

* Sitting by designation as a member of this panel.

■ The tacking statute, I.R.C. § 1223(2),[1] provides that if the transferee's basis is determined in whole or in part by reference to the basis of the prior holder, the holding period of the prior holder may be added to the holding period of the transferee. I.R.C. § 1015[2] governs the determination of basis for

1. I.R.C. § 1223(2)

In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under this chapter such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

2. Sec. 1015. Basis of property acquired by gifts and transfers in trust.

(a) Gifts after December 31, 1920. —If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be *in the hands of the donor* or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, *then for the purpose of determining loss* the basis shall be such *fair market value.* If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Secretary or his delegate shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Secretary or his delegate finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary or his delegate as of the date or approximate date at which, according to the best information that the Secretary or his delegate is able to obtain, such property was acquired by such donor or last preceding owner.

(b) Transfer in trust after December 31, 1920.—If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a *gift,* bequest, or devise), the basis shall be *the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on such transfer under the law* applicable to the year in which the transfer was made.

(c) Gift or transfer in trust before January 1, 1921.—If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition.

(d) Increased basis for gift tax paid— (1) In general.—If—

(A) The property is acquired *by gift on or after the date* of the enactment of the Technical Amendments Act of 1958, the basis shall be the basis determined under subsection (a), increased (but not above the fair market value of the property at the time of the gift) by the amount of gift tax paid with respect to such gift, or

(B) the property was acquired by gift before the date of the enactment of the Technical Amendments Act of 1958 and has not been sold, exchanged, or otherwise disposed of before such date, the basis of the property shall be increased on such date by the amount of gift tax paid with respect to such gift, but such increase shall not exceed an amount equal to the amount by which the fair market value of the property at the time of the gift exceeded the basis of the property in the hands of the donor at the time of the gift.

(2) Amount of tax paid with respect to gift.—For purposes of paragraph (1), the amount of gift tax paid with respect to any gift is an amount which bears the same ratio to the amount of gift tax paid under chapter 12 with respect to all gifts made by the donor for the calendar year in which such gift is made as the amount of such gift bears to the taxable gifts (as defined in section 2053(a) but computed without the deduction allowed by section 2521) made by the donor during such calendar year. For purposes of the preceding sentence, the amount of any gift shall be the amount included with respect to such gift in determining (for the purposes of section 2503(a) the total amount of gifts made during the calendar year, reduced by the amount of any deduction allowed with respect to such gift under section 2522 (relating to charitable deduction) or under section 2523 (relating to marital deduction).

(3) Gifts treated as made one-half by each spouse.—For purposes of paragraph (1), where the donor and his spouse elected, under section 2513 to have the gift considered as made one-half by each, the amount of gift tax

property acquired by gift or a transfer in trust. Subsection (a) provides that if property is acquired by gift, the basis shall be the same as it would be in the hands of the donor. Subsection (b) provides that if property is acquired by a transfer in trust, not by gift, the basis shall be the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on such transfer. Thus, under both subsections the basis of the acquired property is in part determined by reference to the basis in the hands of the prior holder and would meet the requirement of § 1223 permitting tacking of holding periods.

The Commissioner, however, determined that here the transaction was in part a sale and in part a gift because the trusts assumed the $500,000 indebtedness of the settlors. He therefore applied Treas.Reg. 1.1015–4[3] governing transactions in part a sale and in part a gift. This regulation provides that the transferee's basis in property acquired in a part gift part sale transaction shall be the greater of (1) the amount paid by the transferee or (2) the transferor's adjusted basis. In the instant case the $500,000 debt assumed by the trust was the amount paid by the trust for the property. Since this figure is greater than the settlors' $498,468 basis, the trust under Treas.Reg. § 1.1015–4 is required to determine its basis by the amount it paid for the property. This amount has no reference to the transferor's basis as required under § 1223 for tacking; the Commissioner, therefore, refused to allow the trustee to tack the transferor's holding period to its own. In light of the § 1223 requirement for tacking, the Commissioner's determination was clearly correct if Treas.Reg.

paid with respect to such gift under chapter 12 shall be the sum of the amounts of tax paid with respect to each half of such gift (computed in the manner provided in paragraph (2)).

(4) Treatment as adjustment to basis. —For purposes of section 1016(b), an increase in basis under paragraph (1) shall be treated as an adjustment under section 1016(a).

(5) Application to gifts before 1955. —With respect to any property acquired by gift before 1955, references in this subsection to any provision of this title shall be deemed to refer to the corresponding provision of the Internal Revenue Code of 1939 or prior revenue laws which was effective for the year in which such gift was made. [Emphasis added].

3. We note that the Commissioner has cited Treas.Reg. 1.1015–4 as amended in 1963.
    § 1.1015–4 Transfers in Part a Gift and in Part a Sale.
    (a) General Rule. Where a transfer of property is in part a sale and in part a gift, the unadjusted basis of the property in the hands of the transferee is the sum of [—
    (1) Whichever of the following is the greater:
    (i) The amount paid by the transferee for the property, or

(ii) The transferor's adjusted basis for the property at the time of the transfer, and
    (2) The amount of increase, if any, in basis authorized by section 1015(d) for gift tax paid (see § 1.1015–5)]
For determining loss, the unadjusted basis of the property in the hands of the transferee shall not be greater than the fair market value of the property at the time of such transfer. For determination of gain or loss of the transferor, see paragraph (e) of § 1.1001–1.
The 1957 version of the regulation is applicable to the transaction involved here and that regulation was slightly different.
    "§ 1.1015–4 (1957) Transfers in Part a Gift and in Part a Sale.
    (a) General rule. Where a transfer of property is in part a sale and in part a gift, the unadjusted basis of the property in the hands of the transferee is the sum of (1) the amount paid by the transferee for the property, and (2) any excess of the transferor's adjusted basis over such amount. Thus, the unadjusted basis of the property in the hands of the transferee is the greater of (1) the amount paid for the property, or (2) the transferor's adjusted basis at the time of the transfer."
However, since the Commissioner for purposes of this case apparently intends to apply the old version and the new version identically we likewise will not distinguish between the two.

1.1015–4 is a valid interpretation of the provisions of I.R.C. § 1015.

█ The general rule regarding Treasury regulations is that they must be sustained unless unreasonable and plainly inconsistent with the revenue statute. United States v. Correll, 1967, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537; Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831; Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397. It is equally clear, however, that "[t]he regulations must, by their terms and in their application, be in harmony with the statute. A Regulation which is in conflict with or restrictive of the statute is, to the extent of the conflict or restriction, invalid." Scofield v. Lewis, 5 Cir. 1958, 251 F.2d 128, 132. Applying these rules to Treas.Reg. § 1.1015–4, we find that insofar as it would prevent tacking of holding periods in the instant case, it is an inconsistent and unreasonable interpretation of the code provisions it purports to enforce and to that extent is invalid.

The primary purpose of § 1015 is to provide the method by which a transferee must determine the dollar amount of his basis in the transferred property. As an incidental result, this section also determines whether the transferee is permitted to tack his transferor's holding period because that right under § 1223 depends upon the method used to calculate basis. It is this secondary function which is the subject of this appeal, the issue being whether Treas.Reg. § 1.1015–4 is a valid interpretation of § 1015 insofar as that section determines a transferee's right to tack.

We note that § 1015(a) dealing with gifts provides that the transferee's basis for determining gain "shall be the same as it would be in the hands of the donor." Subsection (b) dealing with sales to trusts provides that the transferee's basis "shall be the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on such transfer." Thus both subsections (a) and (b) *require* the transferee to determine his basis at least in part by reference to the transferor's basis. Nevertheless, regulation § 1.1015–4 provides that if the transfer is part a gift and part a sale, then the transferee must determine his basis by the price paid if that amount is greater than his transferor's basis. On its face, the regulation seems to be introducing a concept, price paid, not found in either subsection of the Code. However, upon closer examination it appears that "price paid" is not really at total variance with the Code. Indeed, the "price paid" method will always produce the same dollar amount as will "the grantor's basis increased in the amount of gain or decreased in the amount of loss recognized to the grantor," the method prescribed in subsection (b) of the Code. The two phrases express identical amounts in different words. Therefore, insofar as the primary function of § 1015 is concerned, the change in terminology makes no change in result. The transferee's actual basis will be the same, regardless of which method is used to make the computation. However, the change in terminology is quite significant insofar as it affects the incidental function of § 1015, which is the determination of whether or not the transferee is eligible to tack his transferor's holding period. As this case illustrates, by the mere change in words the regulation cuts off the transferee's right to tack whenever, as here, the price paid is greater than the transferor's basis.

The Commissioner admits that the two concepts, "price paid" and "grantor's basis increased or decreased by the amount of gain or loss recognized to the grantor," produce identical results as far as the actual amount of the transferee's basis is concerned. He seems to justify the change in terminology with the resulting loss of tacking rights by reference to the general theory of tacking. He states:

"It should be noted that the theory of Section 1223(2) militates against

tacking even if a transaction is a Section 1015(b) transfer in trust. When there is a "sale or other disposition" (S.Rep.No.398, supra), to a trust, the basis of the transferee is measured by its cost, not by the transferor's basis— as is the case when the transfer is by gift. (H.Rep.No.1, supra).

"Although Congress chose to phrare (sic) subsection 1015(b) in terms of the transferor's basis plus the gain which he recognized on the transfer, the conceptual and practical effect would be the same if the trustee's basis was determined under Section 1012, which defines basis as the transferee's cost. For example, if the transferor holds property with a basis of 10 and a value of 20 and sells it to a transferee for 20, the transferee's basis under Section 1012 would be 20, its cost. Under Section 1015(b), the basis to a transferee who is a trustee would be the transferor's basis, 10, plus the gain recognized to the transferor, 10, for a total of 20. To allow tacking of the transferor's holding period by the transferee simply because it is a trustee would violate the basic theory which underpins tacking succession by the transferee to the transferor's basis."

The short answer to the Commissioner's complaint is that though he may consider Congress to have made an unfortunate choice of words, Congress nevertheless chose them. As Justice Harlan remarked in United States v. Calamaro, 1957, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed. 2d 1394, "Neither we nor the Commissioner may rewrite the statute simply because we may feel that the scheme it creates could be improved upon." Id. at 356, 77 S.Ct. at 1142.

■ Since both the gift and the sale subsections of § 1015 employ words which would permit tacking, and since neither subsection makes any distinction in this regard between a transferee who pays more than his grantor's basis and one who does not, we think that such a distinction in the regulation pertaining to a part gift part sale transaction is unreasonable and inconsistent with the statute. We therefore hold that the trustee in the instant case is entitled to tack the settlors' holding periods to that of the trusts and that to the extent Treas.Reg. § 1.1015–4 would prevent such it is invalid. In so holding we find some comfort in the fact that the court in Turner v. Commissioner of Internal Revenue, 49 T.C. 356, 364, affirmed, Commissioner of Internal Revenue v. Turner, 6 Cir. 1969, 410 F.2d 752, the only case we have discovered which is even remotely analogous to the case at bar, permitted tacking, albeit for different reasons, in a part gift part sale transaction.

The Commissioner apparently did not contest the actual basis used by the trustee in computing the gain realized by the trusts in the instant case. As a result, we do not have before us on this appeal the question of whether or not Treas. Reg. § 1.1015–4 properly implements the principal function of the statute, i. e., to provide a method for computing the basis accorded a transferee in a part gift part sale transaction. Our decision is therefore limited to the effect of the regulation on I.R.C. § 1223 tacking rights. However, we would be less than candid if we did not indicate at this point that after our brief trip into the labyrinth of the Treasury Regulations we emerged with grave doubts concerning the validity of the basis determination method prescribed by § 1.1015–4.

The judgment of the trial court is affirmed.