DURBIN PAPER STOCK COMPANY, INCORPORATED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8647–77.    Filed January 20, 1983.

*Robert E. Panoff*, for the petitioner.
*W. Robert Abramitis*, for the respondent.

OPINION

STERRETT, *Judge*: By notice of deficiency dated May 26, 1977, respondent determined deficiencies in petitioner's Federal income taxes as follows:

| *TYE July 31—* | *Deficiency* |
| --- | --- |
| 1973 | $19,010.32 |
| 1974 | 29,941.97 |
| 1975 | 235,130.00 |

After concessions, the sole issue remaining for our decision is whether Durbin International, Inc., a wholly owned subsidiary of petitioner, was a Domestic International Sales Corp. (DISC) as defined in section 992(a), I.R.C. 1954, during the fiscal years ended July 31, 1974, and July 31, 1975.

The facts in this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Petitioner Durbin Paper Stock Co., Inc., is a Florida corporation which had its principal place of business in Miami, Fla., at the time of filing of the petition herein. For its fiscal year ended July 31, 1974, petitioner filed a consolidated corporate Federal income tax return with its subsidiary, Durbin Paper Stock Co. of Alabama, Inc. (hereinafter Alabama). For its fiscal year ended July 31, 1975, petitioner filed a consolidated corporate Federal income tax return with Alabama and another subsidiary, Durbin Paper Stock Co. of Tampa, Inc.

Durbin International, Inc. (hereinafter International), a wholly owned subsidiary of petitioner, is a Florida corporation which was incorporated on May 31, 1974. International filed separate Federal income tax returns as a DISC for its fiscal years ended July 31, 1974, and July 31, 1975.

International had 7,000 shares of $1 par common stock authorized. Of this amount, International issued 3,000 common shares to petitioner on May 31, 1974. During the years in

issue, International did not receive any cash or other property in exchange for this stock. Instead, the financial records of International reflected a subscription receivable of $3,000.

International maintained a bank account beginning on September 27, 1974, with an initial balance of $2,000. The bank account balance rose to $3,000 as of October 9, 1974. These bank balances consisted of the proceeds of loans from petitioner.

International's taxable income for the years ended July 31, 1974, and July 31, 1975, was $64,483 and $345,684, respectively. Petitioner reported DISC dividends of $32,242 and $172,842, respectively, for those years.

In his notice of deficiency, respondent determined that International did not qualify as a DISC under section 992, and, therefore, that International's taxable incomes for its 1974 and 1975 fiscal years were includable on petitioner's consolidated returns for its corresponding fiscal years.[1]

Our task in the instant case is to decide whether International qualifies as a DISC for the years under consideration.

Basically, a corporation which qualifies as a DISC is not taxable on its profits as earned. Congress enacted the DISC legislation as part of the Tax Reform Act of 1971—

to provide tax incentives for U.S. firms to increase their exports. This is important not only because of its stimulative effect but also to remove a present disadvantage of U.S. companies engaged in export activities through domestic corporations. Presently, they are treated less favorably than those which manufacture abroad through the use of foreign subsidiary corporations. United States corporations engaging in export activities are taxed currently on their foreign earnings at the full U.S. corporate income tax rate regardless of whether these earnings are kept abroad or repatriated. In contrast, U.S. corporations which produce and sell abroad through foreign subsidiaries generally can postpone payment of U.S. tax on these foreign earnings so long as they are kept abroad. [H. Rept. 92–533 (1971), 1972–1 C.B. 498, 529.]

A corporation's status as a DISC is tested at the end of each year. Section 992 sets forth the statutory requirements which

---

[1]In the event we determine that International is not entitled to be treated as a DISC pursuant to sec. 992, petitioner and respondent agree that International's taxable income is includable on Durbin's consolidated return for each of the years in issue.

must be satisfied for a corporation to qualify as a DISC for a taxable year.[2] This section requires that a corporation seeking qualification as a DISC meet six conditions, but we need concern ourselves only with the requirement set forth in section 992(a)(1)(C) that a corporation must have outstanding stock with a par or stated value of at least $2,500 on each day of the taxable year. Specifically, respondent alleges that International failed to satisfy the capitalization requirement contained in his regulations which, in his view, clarifies the statutory language of section 992(a)(1)(C). This requirement, enunciated in section 1.992–1(d)(1), Income Tax Regs., provides in pertinent part:

(d) *Capitalization requirement*—(1) *In general.* In order for a corporation to be a DISC for a taxable year, such corporation must have, on each day of such taxable year, only one class of stock, and the par value * * * of such corporation's outstanding stock, and the amount of cash or other property which was paid in, must be, on each day of such taxable year, at least $2,500. * * * For purposes of this subparagraph, property paid in does not include notes or other evidences of indebtedness, under which a shareholder of such corporation is an obligor, received by such corporation in return for its stock. * * *

The parties herein have stipulated that during the taxable years ended July 31, 1974, and July 31, 1975, no cash or other property was paid into International in exchange for International's stock. Accordingly, respondent contends that International did not meet the requirements of section 1.992–1(d)(1), Income Tax Regs., and therefore is not entitled to be treated as a DISC.

---

[2]Sec. 992(a)(1) provides:

SEC. 992. REQUIREMENTS OF A DOMESTIC INTERNATIONAL SALES CORPORATION.
   (a) DEFINITION OF "DISC" AND "FORMER DISC".—
     (1) DISC.—For purposes of this title, the term "DISC" means, with respect to any taxable year, a corporation which is incorporated under the laws of any State and satisfies the following conditions for the taxable year:
       (A) 95 percent or more of the gross receipts (as defined in section 993(f)) of such corporation consist of qualified export receipts (as defined in section 993(a)),
       (B) the adjusted basis of the qualified export assets (as defined in section 993(b)) of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year,
       (C) such corporation does not have more than one class of stock and the par or stated value of its outstanding stock is at least $2,500 on each day of the taxable year, and
       (D) the corporation has made an election pursuant to subsection (b) to be treated as a DISC and such election is in effect for the taxable year.

In addition, respondent asserts that petitioner is not entitled to be considered a DISC for the taxable year ended July 31, 1974, because it failed to meet the requirement set forth in section 1.992–1(a)(6), Income Tax Regs. This regulation requires that a corporation seeking DISC status must maintain a bank account on each day of the taxable year subject to certain inapplicable exceptions listed in section 1.992–1(i), Income Tax Regs. It is stipulated that International did not maintain a separate bank account prior to September 27, 1974. Accordingly, respondent contends International is clearly not entitled to DISC status for the taxable year ended July 31, 1974.[3]

Petitioner, however, points out that respondent does not have the power to promulgate regulations adding provisions that he believes Congress should have included when such provisions are inconsistent with Congress's clear intent. By inventing a "paid-in" capital requirement pursuant to section 1.992–1(d)(1), Income Tax Regs., and a separate bank account requirement under section 1.992–1(a)(6), Income Tax Regs., respondent, asserts petitioner, has overstepped the bounds of his authority and in effect has amended section 992 by regulation. Petitioner also submits that section 1.992–1(d)(1), Income Tax Regs., is invalid to the extent that it does not permit a subscription receivable to satisfy the alleged capital requirement of section 992(a)(1)(C).[4]

The Commissioner has broad authority to promulgate all needful regulations. Sec. 7805(a); *United States v. Correll,* 389 U.S. 299, 306–307 (1967). It is well settled that Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948); accord *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 169 (1981). Because they constitute contemporaneous constructions by those charged with administration of these statutes, they "should not be overruled except for weighty reasons."

---

[3]See note 11 *infra.*

[4]Further, petitioner contends that, even if secs. 1.992–1(d)(1) and 1.992–1(a)(6), Income Tax Regs., are valid, they should apply only prospectively to International, and, therefore, should not affect its July 31, 1974, fiscal year. Lastly, petitioner reasons that International still should be treated as a DISC, even if the subject regulations are valid, because it substantially complied with the conditions set forth in sec. 992(a)(1).

*Bingler v. Johnson*, 394 U.S. 741, 750 (1969); *Commissioner v. South Texas Lumber Co.*, *supra* at 501.

It is equally clear, however, that, although regulations are entitled to considerable weight, "respondent may not usurp the authority of Congress by adding restrictions to a statute which are not there." *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 (1982). See *United States v. Marvett*, 325 F.2d 28, 30 (5th Cir. 1963); *Coady v. Commissioner*, 33 T.C. 771, 779 (1960), affd. 289 F.2d 490 (6th Cir. 1961). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language of the statute, its origins, and its purpose. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982); *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979).

A regulation which is in conflict with the statute is invalid to that extent. *Citizen's National Bank of Waco v. United States*, 417 F.2d 675, 679 (5th Cir. 1969); *Arrow Fastener Co. v. Commissioner*, 76 T.C. 423, 430 (1981). Where the provisions of the statute are unambiguous and its directive specific, there is no power to amend it by regulation. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936); *Arrow Fastener Co. v. Commissioner*, *supra*.[5]

Section 992(a)(1)(C), as relevant here, requires only that a corporation have outstanding stock with a par or stated value of at least $2,500 on each day of the taxable year. In enacting this requirement Congress stated:

This test is designed to make sure that a corporation may qualify as a DISC even though it has relatively little capital. It is recognized that this rule constitutes a relaxation of the general rules of corporate substance. The separate incorporation of a DISC is required to make it possible to keep a better record of the export profits to which tax deferral is granted, but this does not necessitate in all other respects the separate relationships which otherwise would exist between a parent corporation and its subsidiary. [H. Rept. 92–533 (1971), 1972–1 C.B. 498, 530; S. Rept. 92–437 (1971), 1972–1 C.B. 559, 611.]

Thus, the provision requiring a corporation to have outstanding stock with a par or stated value of $2,500 is not intended to

---

[5]The regulation in issue is an "interpretative" regulation issued under general authority vested in respondent under sec. 7805 and is to be accorded less weight than "legislative" regulations issued pursuant to a specific congressional delegation of law-making authority. *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 n. 5 (1982).

tighten the general rules of corporate substance, but rather to relax them. Congress enacted section 992(a)(1)(C) to make it possible for a corporation to qualify as a DISC with relatively little capital.

Petitioner's subsidiary, International, was incorporated under the laws of the State of Florida. Accordingly, the question of whether that corporation has outstanding stock with a par or stated value of $2,500 must be determined pursuant to Florida law.[6]

Under Florida law:

607.054 Consideration and payment for shares

(1) Shares of stock with par value may be issued for such consideration, having a value not less than the par value of the shares issued therefor, as is determined from time to time by the board of directors.

\*    \*    \*    \*    \*    \*    \*

(5) The consideration for the issuance of shares or for the disposal of treasury shares may be paid, in whole or in part, in cash or other property, tangible or intangible, or in labor or services actually performed for the corporation. Shares may not be issued until the full amount of the consideration therefor has been paid. When payment of the consideration for which shares are to be issued shall have been received by the corporation, such shares shall be deemed to be fully paid and nonassessable.

(6) Future services shall not constitute payment or part payment for the issuance of shares of a corporation.

[Fla. Stat. Ann. sec. 607.054 (West 1977).]

From the foregoing statute we conclude that there is no prohibition in Florida law against the use of any type of consideration other than future services. Further, this conclusion finds support in decisions rendered by the State's courts. In *Lundquist v. Gulfshore Television Corp.*, 328 So. 2d 202 (Fla. Ct. App. 1976), the corporation in question issued 52 percent of its authorized stock to its general manager pursuant to a "Stock Subscription and Loan Agreement." As stipulated in the agreement, the general manager paid for such shares by executing a non-interest-bearing promissory note which sum

---

[6]Sec. 992(a) specifically requires a DISC to be "incorporated under the laws of any State." Additionally, sec. 1.992–1(d)(1), Income Tax Regs., defers to State law when it declares:

"If a corporation has a realized or unrealized loss during a taxable year which results in the impairment of all or part of the capital required under this subparagraph, such impairment does not result in disqualification under this subparagraph, provided that such corporation does not take any legal or formal action under State law to reduce capital for such year below the amount required under this subparagraph."

was equal to the par value of his shares. Subsequently, the general manager was dismissed from his position by the board of directors who brought suit to have his majority stock canceled alleging that such stock was illegally issued. At the time of the suit, the former general manager had made only one payment on the note to the corporation. In holding that the corporation was estopped from asserting that the stock was illegally issued, the District Court of Appeals of Florida stated that Florida law allows for the payment of subscribed shares of a corporation by a promissory note.

We note that, according to Florida law, a subscriber to a corporation's stock agrees to pay for the subscription according to the conditions of the corporation's charter, regardless of the form or language of the subscription. *Bryan v. St. Andrews Bay Community Hotel Corp.*, 99 Fla. 132, 126 So. 142 (1930); *Sudduth v. St. Andrews Bay Community Hotel Corp.*, 99 Fla. 151, 126 So. 302 (1930). Furthermore, shareholders in corporations are liable, upon a dissolution of the company, for the debts thereof equal to the amount of the par value of the stock held by them at the time of such dissolution. *Gibbs v. Davis*, 27 Fla. 531, 8 So. 633 (1891). Thus, the mere act of subscribing to the 3,000 shares of outstanding stock of International created a valid debt which constituted consideration for the issuance of such shares, and the creditors of International were therefore protected against loss to the extent of the par value ($3,000) of its outstanding stock regardless of the fact that the capital had not actually been paid in. Respondent has conceded that International was incorporated under Florida law and that International's stock was issued to petitioner and, therefore, was outstanding May 31, 1974. In point of fact, respondent has offered no argument that International's stock was not supported by valid indebtedness, apparently conceding that the subscription receivable constituted valid debt. Thus, since International had validly outstanding stock with a par value of $3,000 under Florida law, we hold that it met the statutory requirement that it have outstanding stock with a par or stated value of at least $2,500 on each day of the taxable years in question.

Respondent, however, contends that petitioner cannot prevail because it has not met the "paid-in" capital requirement of his income tax regulation, section 1.992–1(d)(1), which he

argues, as we have noted, merely clarifies the statute. We do not agree with respondent's clarification since we find section 992(a)(1)(C) to be unambiguous. In our view, there is no statutory authority for the "paid-in" capital requirement set forth in section 1.992–1(d)(1), Income Tax Regs.[7] The regulatory term "paid-in" capital adds an unwarranted dimension to the statutory words "par or stated value." The regulation in question does not allow a corporation to be capitalized with either "notes or other evidences of indebtedness, under which a shareholder of such corporation is an obligor." However, the relevant corporate law does allow a corporation to be capitalized in this manner. We have quoted the congressional intent that the rules with respect to the incorporation of a DISC be more relaxed than the general rules of corporate substance. Yet, in this instance, respondent's regulation tightens the rules by adding requirements not to be found in the applicable State law.[8]

Respondent seems to have lost sight of the purpose of DISCs and the motivation behind the legislation establishing them. Congress stated that "The separate incorporation of a DISC is required to make it possible to keep a better record of the export profits * * * but this does not necessitate in all other respects the separate relationships which otherwise would exist between a parent corporation and its subsidiary."[9] International had its own set of books and records and it is clear from the evidence that there was no difficulty in determining its export profits.

As a matter of fact, the regulation, itself, seems unclear and inconsistent. Although it requires that a corporation initially

---

[7]See H. Feinschreiber, Domestic International Sales Corporations 24 (1978). According to the author:

"Shortly after the DISC provisions were enacted, a number of taxpayers attempted to satisfy the minimum-capital requirement through accounting entries or notes. This technique was never accepted by the IRS in its regulations, but the regulations are unduly restrictive. Companies facing disallowance of DISC status because they attempted to satisfy the minimum-capital requirements in this manner may find it advantageous not to accept the disallowance but to litigate the issues, because there is no satutory [sic] authority for this requirement. [Fn. ref. omitted.]"

[8]We note that many States would not allow "notes or other evidences of indebtedness" to be used to capitalize a corporation. In such States, a corporation capitalized in the manner of International would not qualify as a DISC since it would not have validly issued and outstanding stock with a par or stated value of $2,500 under applicable State law.

[9]H. Rept. 92–533 (1971), 1972–1 C.B. 530; S. Rept. 92–437 (1971), 1972–1 C.B. 611.

be capitalized with $2,500 of cash or property, there is no requirement that it remain so. Section 1.992–1(d)(1), Income Tax Regs., provides in pertinent part:

Sec. 1.992–1 Requirements of a DISC.

(d) *Capitalization requirement*—(1) *In general.* * * * If a corporation has a realized or unrealized loss during a taxable year which results in the impairment of all or part of the capital required under this subparagraph, such impairment does not result in disqualification under this subparagraph, provided that such corporation does not take any legal or formal action under State law to reduce capital for such year below the amount required under this subparagraph. For example, if a corporation issues ten shares of stock at a par value of $250 each, and received property other than cash worth $2,500 in return, and because of market fluctuations the value of such property is reduced to $1,500 at any time during a taxable year, such corporation is not disqualified from being treated as a DISC for that year solely because of such impairment of its capital. The sale, exchange, or other disposition of cash or other property paid in for stock shall not result in the failure of a corporation to qualify as a DISC pursuant to this subparagraph, unless such transaction is a purchase of, or exchange for, a note or other evidence of indebtedness under which a shareholder of such corporation is an obligor.

Thus, the "paid-in" capital requirement does not grant continuous protection to creditors or make it possible to keep a better record of export profits.

Respondent has not favored us with any justification for the strict "paid-in" requirement.[10] He has failed to show how it either harmonizes with the statute or further implements congressional intent in his minimal brief. Respondent has no power to promulgate a regulation adding provisions that he believes Congress should have included but did not. *Helvering v. Credit Alliance Corp.*, 316 U.S. 107, 113 (1942). We therefore hold section 1.992–1(d)(1) invalid to the extent it requires capital to be "paid-in."

Turning to the second regulation in issue, the same analysis is equally applicable to the regulation requiring a DISC to have its own bank account. We likewise see no authority for this requirement, and respondent has not cited us to a single

---

[10]See, e.g., *Estate of Boeshore v. Commissioner, supra* at 530, where respondent was unable to provide any reasons for a regulation which disallowed a deduction for the value of a charitable unitrust interest while simultaneously allowing a deduction for the value of a charitable remainder interest in the same property. The regulation in question was invalidated by this Court.

word in the statute in support of it. It is no wonder that it has been said that "This seemingly simple requirement has been a source of considerable controversy because there is no statutory basis for it.[11] H. Feinschreiber, Domestic International Sales Corporations 24, 38 (1978).

We suspect that the separate bank account requirement was formulated to complement the "paid-in" capital requirement. However, since we are holding that there is no "paid-in" capital requirement in order to maintain DISC status, a DISC may very well have no funds to deposit in a separate bank account.

Although the maintenance of a separate bank account might be desirable in certain circumstances, the absence of one certainly should not cause a corporation to lose its DISC status. Indeed, the two regulations in this case are internally inconsistent in that, since section 1.992–1(d)(1), Income Tax Regs., would have allowed a corporation to be capitalized with either cash or property, a DISC complying with the "paid-in" capital requirement might have had no cash to open a separate bank account.

Respondent has offered this Court no justification for the

---

[11]None of the six basic criteria for DISC status contained in sec. 992(a) require the maintenance of a separate bank account. The Department of the Treasury issued a pamphlet early in 1972 entitled, "DISC: A Handbook for Exporters." This publication suggested that a DISC have its own bank account but did not require that it do so.

The separate bank account requirement was first announced by the Treasury shortly thereafter in a ruling also issued as a Technical Information Release. T.I.R. 1152, Mar. 16, 1972; Rev. Rul. 72–166, 1972–1 C.B. 220. This requirement was subsequently enunciated in proposed regulations issued later in the year. However, neither the proposed regulations nor the Technical Information Release disclosed the date when this new requirement had to be satisfied.

When the present regulations were finalized in 1976, they contained both a limited grace period and a phase-in provision. Generally, the regulations require a DISC to have a separate bank account on each day of the taxable year. Sec. 1.992–1(a)(6), Income Tax Regs. However, a corporation electing DISC status for its first taxable year is given a 90-day grace period from the beginning of its taxable year to satisfy the bank account requirement. Sec. 1.992–1(i)(1)(i), Income Tax Regs. Furthermore, the phase-in rule provides that a DISC will be treated as satisfying the separate bank account requirement for any taxable year ending before Oct. 31, 1974, if it had a separate bank account at any time during that taxable year. Sec. 1.992–1(i)(2)(i), Income Tax Regs.

For taxable years ending with or including Oct. 31, 1974, the regulations provide that the separate bank account requirement will be satisfied if the DISC had a separate bank account on Oct. 31, 1974, and on each succeeding day of the taxable year. Sec. 1.992–1(i)(2)(ii), Income Tax Regs. Thus, since International had a separate bank account as of Sept. 27, 1974, it satisfied the separate bank account requirement for its taxable year ended July 31, 1975, but not for its taxable year ended July 31, 1974.

existence of the separate bank account requirement other than for the purpose of maintaining an accurate account of the DISC's activities and income. However, a DISC must already maintain a separate set of books and records in order to keep track of its assets and receipts for purposes of other statutory requirements.[12]

Thus, this is an unnecessary and superfluous requirement that is not supported by either the statute or its legislative history. Accordingly, we hold that the separate bank account requirement of section 1.992–1(a)(6), Income Tax Regs., is also invalid.

It follows from the foregoing discussion that we hold that International is entitled to be treated as a DISC during the years in issue.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

___

[12]Sec. 992(a) requires that (1) 95 percent or more of the corporation's gross receipts consist of qualified export receipts, and (2) the adjusted basis of the qualified export assets of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year.