TRUCK AND EQUIPMENT CORPORATION OF HARRISONBURG, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18024-89.          Filed February 6, 1992.

*Robert E. Falb* and *John S. Ross III,* for petitioner.
*Ruud L. DuVall,* for respondent.

PARKER, *Judge:* By statutory notice of deficiency dated May 17, 1989, respondent determined a deficiency in petitioner's Federal income taxes and additions to tax as follows:

| | | | Additions to tax | |
| | | Sec. | Sec. | Sec. |
| TYE | Deficiency | 6653(a)(1)(A) | 6653(a)(1)(B) | 6661 |
| 1/31/86 | $64,117 | $3,205.85 | 50 percent of the interest due on underpayment of $1,097 | $16,029.25 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issue remaining for decision is whether or not petitioner is entitled to deduct employee bonuses in the amount of $137,000 in its fiscal year ended January 31, 1986. These bonuses were properly accrued as of

---

[1]Petitioner conceded prior to trial that respondent correctly disallowed $2,002 of charitable contributions and $385 in fines that were claimed on its U.S. corporation income tax return for its fiscal year ended Jan. 31, 1986. Respondent conceded on brief that there was no negligence as set forth in the statutory notice of deficiency under sec. 6653(a)(1)(A) and (B). Respondent also conceded on reply brief that petitioner is not liable for the substantial understatement addition under sec. 6661.

the fiscal year ended January 31, 1986, but were paid more than 2½ months after the end of that fiscal year. In deciding this issue, we must consider the validity of section 1.404(b)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4391 (Feb. 4, 1986), which has been called into question, and whether this temporary regulation applies to petitioner's bonus payments method.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The parties' stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Truck & Equipment Corp. of Harrisonburg is a corporation wholly owned by its president, Robert E. Plecker. At the time of filing of the petition, petitioner had its principal place of business in Harrisonburg, Virginia.

Petitioner is a Mack truck franchise dealer that sells trucks and parts and services Mack trucks. Petitioner uses the accrual method of accounting and files its corporate tax returns on a fiscal year basis. Petitioner's fiscal year ends on January 31.

During all relevant years, it was petitioner's policy to pay average wages for the geographic area in which the company operates and to pay bonuses to employees in periods in which profits exceeded normal operating expectations. Petitioner paid bonuses to employees in the majority of years that it has had profitable operations. At the end of each fiscal year, petitioner's board of directors would determine the bonuses as a percentage of that fiscal year's net income. Individual bonuses were allocated based upon each employee's skill level and experience, which are the greatest elements contributing to the company's profitable operations. The amount paid to each employee depended on his compensation and years of service. In order to receive a bonus, an employee had to be employed by petitioner on the last day of the fiscal year for which the bonus was paid (i.e., the fiscal year during which the services were performed) and also on the date of actual payment. Petitioner consistently deducted the bonuses in the year accrued, but generally paid these bonuses in July and December subsequent to the end of the fiscal year for which the bonuses and the deduction were accrued.

This method of determining and paying bonuses was pursuant to an arrangement adopted by the corporation and in effect for at least 17 years. This arrangement was adopted because petitioner's truck inventory and receivables are at their highest levels in the early part of its fiscal year. Correspondingly, petitioner's cash is at its lowest level at that time. Petitioner's sales volume reaches its peak in the spring. By July, inventory levels are substantially reduced with a commensurate inflow of cash.

At a meeting of petitioner's board of directors on January 30, 1986, a motion was made, seconded, and passed by the affirmative vote of all directors that an employee bonus of 16 percent of the company's net income for the fiscal year ended January 31, 1986, be accrued as of January 31, 1986. This bonus was to be paid to employees, employed as of January 31, 1986, as additional compensation for continuing good work with the corporation in 1985 (i.e., during fiscal year ended January 31, 1986). The bonus was to be paid during the upcoming fiscal year ending January 31, 1987, the exact time being left to the discretion of the board of directors. The aggregate amount of the employee bonuses for petitioner's fiscal year ending January 31, 1986, was ascertainable as of the end of such year when payments of the bonuses were authorized by petitioner's board of directors. That amount was properly accruable for the fiscal year ended January 31, 1986.

The total bonus amount for fiscal year ended January 31, 1986, was $137,000. This amount was paid as follows: $53,530 on July 25, 1986; $74,105 on December 12, 1986; and $9,365 during 1987. No part of the bonus amount for the fiscal year ended January 31, 1986, was paid within 2½ months of the end of that fiscal year. Furthermore, as of January 31, 1986, it was foreseeable that no part of the proposed employee bonuses would be paid within 2½ months of that date. Petitioner had 34 employees on January 31, 1986, but paid bonuses to only 33 employees because one employee left the company prior to the date of payment.

Petitioner filed a timely U.S. Corporation Income Tax Return (Form 1120) for its taxable year ended January 31, 1986, on July 28, 1986. S.B. Hoover & Co. of Harrisonburg, Virginia, audited petitioner's books and records, gave tax advice, and prepared this tax return. At that time neither

petitioner's secretary-treasurer who signed the corporate return nor the S.B. Hoover & Co. certified public accountant who prepared that return was aware of section 1.404(b)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4391, that was published on February 4, 1986.  On the return, petitioner claimed the employee bonuses in the amount of $137,000 as a deduction.  Respondent disallowed this deduction on the grounds that the bonus payments are subject to the deferred compensation rules of section 404.[2]

## OPINION

Petitioner contends that the bonus payments in question were properly accrued as of January 31, 1986, and that the deductibility of these accrued bonuses is and should be governed by the "all events" test of section 461 and not by the deferred compensation rules of section 404.[3]  Petitioner asserts that section 1.404(b)-1T, Temporary Income Tax Regs., is invalid or, in the alternative, not applicable to its yearend bonus method.  Thus petitioner relies upon the exception in the permanent regulations, section 1.404(b)-1, Income Tax Regs.  That permanent regulation provides that the provisions of section 404(a) are "not intended to cover the case where an employer on the accrual basis defers payment of compensation after the year of accrual merely because of inability to pay such compensation in the year of accrual, as, for example, where the funds of the company are not sufficient to enable payment of the compensation without jeopardizing the solvency of the company, or where the liability accrues in the earlier year, but the amount payable cannot be exactly determined until the later year."  Sec. 1.404(b)-1, Income Tax Regs.

The primary issue in this case is not one of deductibility but of timing of the deduction.  Section 404(a) allows a deduction

---

[2]In an earlier audit of petitioner's returns for the years 1980-82, petitioner's deductions for similar bonus payments had also been disallowed, and petitioner did not challenge the disallowance since the tax amount involved was small.  The disallowance in that instance was based on the ground that the bonus payments were not properly accruable.

[3]Sec. 1.461-1(a)(2), Income Tax Regs, provides that "Under the accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy."  See also Rev. Rul. 61-127, 1961-2 C.B. 36.

for payments of compensation; however, if compensation is paid or accrued under a plan deferring the receipt of compensation, the compensation is not deductible in the year the services were rendered, but rather is subject to the limitations imposed by section 404. The pertinent limitation, in this case, is found in section 404(a)(5). Under that section, an employer generally is permitted a deduction for deferred compensation in the year that such compensation is includable in the employee's gross income even though the employer is on the accrual basis and normally would be entitled to a current deduction. Moreover, even in the absence of a plan deferring the receipt of compensation, section 404(b) provides that methods or arrangements of employer contributions or compensation that have the effect of such a plan are covered by section 404(a) and the limitations of section 404, i.e., are treated "as if there were such a plan." Sec. 404(b).

Prior to 1978, the deduction-timing rules for deferred compensation applied only to payments to employees, not to independent contractors. In 1978, Congress extended the rules regarding the deductibility of deferred compensation payments to independent contractors by adding section 404(d).[4] Sec. 133(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2783. In so doing, Congress also clarified that these deduction-timing rules apply to *any* method of contributions or compensation having the effect of a plan deferring the receipt of compensation.[5] H. Rept. 95-1445 (1978), 1978-3 C.B. (Vol. 1) 181, 235; S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 371.

In 1984, Congress extended to welfare benefits (other than

---

[4]Prior to the addition of sec. 404(d), the rule allowing a deduction for deferred compensation only when there was a corresponding income inclusion applied solely in the employer-employee relationship. Thus, current deductions were still available for certain deferred benefits plans or arrangements created for independent contractors. Sec. 404(d) denies a deduction for deferred compensation provided under a plan or arrangement for nonemployee participants until that compensation is includable in the participants' gross income.

[5]Sec. 133(b) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2783, thus clarified sec. 404(b) by changing the catch-all language "or similar plan" to read "or other plan". In other words, a method of compensation or employer contributions having the effect of a plan deferring the receipt of compensation does not have to be similar to a stock bonus, pension, profit-sharing, or annuity plan to be subject to the deferred compensation deduction-timing rules. *Any* method of compensation or contribution having that effect is subject to the deferred compensation deduction-timing rules.

compensation) the same treatment already accorded to deferred compensation.

In 1984, section 404(b) was broadened to encompass deferred benefits (other than compensation) so as to subject such benefits to the deferred compensation rules of section 404.[6] By section 512(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, Congress amended section 404(b) to read as follows:

SEC. 404(b). METHOD OF CONTRIBUTIONS, ETC., HAVING THE EFFECT OF A PLAN; CERTAIN DEFERRED BENEFITS.—

(1) METHOD OF CONTRIBUTIONS, ETC., HAVING THE EFFECT OF A PLAN.—If—
(A) there is no plan, but
(B) there is a method or arrangement of employer contributions or compensation which has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation (including a plan described in paragraph (2)),

subsection (a) shall apply as if there were such a plan.

(2) PLANS PROVIDING CERTAIN DEFERRED BENEFITS.—
(A) IN GENERAL.—For purposes of this section, any plan providing for deferred benefits (other than compensation) for employees, their spouses, or their dependents shall be treated as a plan deferring the receipt of compensation. In the case of such a plan, for purposes of this section, the determination of when an amount is includible in gross income shall be made without regard to any provisions of this chapter excluding such benefits from gross income.
(B) EXCEPTION.—Subparagraph (A) shall not apply to any benefit provided through a welfare benefit fund (as defined in section 419(e)).

This amendment applies to amounts paid or incurred after July 18, 1984, in tax years ending after such date.

Section 1.404(b)-1, Income Tax Regs., relied upon by petitioner, was adopted in 1956 and does not reflect either the 1978 or 1984 amendments to section 404. It provides, in part:

If an employer on the accrual basis defers paying any compensation to an employee until a later year or years under an arrangement having the effect

---

[6]Prior to amendment, sec. 404(b) read as follows:

SEC. 404(b). METHOD OF CONTRIBUTIONS, ETC., HAVING THE EFFECT OF A PLAN. —If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan.

of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, he shall not be allowed a deduction until the year in which the compensation is paid. This provision is not intended to cover the case where an employer on the accrual basis defers payment of compensation after the year of accrual merely because of inability to pay such compensation in the year of accrual, as, for example, where the funds of the company are not sufficient to enable payment of the compensation without jeopardizing the solvency of the company, or where the liability accrues in the earlier year, but the amount payable cannot be exactly determined until the later year.

On January 29, 1986, the Secretary issued section 1.404(b)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4391 (Feb. 4, 1986), to implement the changes made by the Deficit Reduction Act of 1984, to be discussed in more detail hereinafter. Q-2 and A-2 of the temporary regulations provide as follows:

Q-2: When does a plan, or method or arrangement, defer the receipt of compensation or benefits for purposes of section 404(a), (b), and (d)?

A-2: (a) For purposes of section 404(a), (b), and (d), a plan, or method or arrangement, defers the receipt of compensation or benefits to the extent it is one under which an employee receives compensation or benefits more than a brief period of time after the end of the employer's taxable year in which the services creating the right to such compensation or benefits are performed. * * * An employee is determined to receive compensation or benefits within or beyond a brief period of time after the end of the employer's taxable year under the rules provided in this Q&A. * * *

(b)(1) A plan, or method or arrangement, shall be presumed to be one deferring the receipt of compensation for more than a brief period of time after the end of an employer's taxable year to the extent that compensation is received after the 15th day of the 3rd calendar month after the end of the employer's taxable year in which the related services are rendered ("the 2½ month period"). Thus, for example, salary under an employment contract or a bonus under a year-end bonus declaration is presumed to be paid under a plan, or method or arrangement, deferring the receipt of compensation, to the extent that the salary or bonus is received beyond the applicable 2½ month period. * * *

Petitioner first contends that section 1.404(b)-1T, Temporary Income Tax Regs., *supra,* is invalid because, although it was intended to implement the amendments to section 404(b), there is no statutory foundation for the 2½-month period. Petitioner contends that the focus of Congress in approaching section 404 has always been the nature of the plan or method of deferral, not the timing of payments. Petitioner interprets the actions of Congress, in recognizing that yearend bonuses are subject to the deferred compensation rules if not paid

within "a reasonable period", as a refusal to establish a bright-line timing rule. The overriding principle, according to petitioner, should be that the determination of whether a plan or method of deferred compensation exists involves an evaluation of the entire arrangement, not merely the time of receipt of compensation by the employee.

Petitioner argues that the Secretary has overstepped the bounds of his authority and, in effect, has amended section 404 by regulation. Petitioner says that the Secretary is basing the timing of the deductibility of yearend bonuses arbitrarily on the bright-line period of time within which bonus payments are or are not made to employees. Petitioner asserts that the Secretary does not have the power to promulgate regulations that change or add provisions that the Secretary believes Congress should have addressed, especially when, according to petitioner, such provisions are inconsistent with Congress' clear intent.

Respondent's position is that the disputed temporary regulation is valid because it appropriately implements section 404(b), as directed by the legislative history of the Deficit Reduction Act of 1984. While the statutory language does not specifically express a "2½-month period", respondent contends that section 1.404(b)-1T, Temporary Income Tax Regs., *supra,* is consistent with the statute and carries out the original intent of Congress, as set forth in the legislative history of the statute and its various amendments.

## Validity of the Temporary Regulation

We have previously held that temporary regulations are entitled to the same weight as final regulations. *Nissho Iwai American Corp. v. Commissioner,* 89 T.C. 765 (1987); *Zinniel v. Commissioner,* 89 T.C. 357 (1987), affd. 883 F.2d 1350 (7th Cir. 1989). The temporary regulation in question is an interpretive one promulgated under the Secretary's general rule-making power under section 7805(a).[7] "The role of the

---

[7]"Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." Sec. 7805(a); see *United States v. Correll,* 389 U.S. 299, 306-307 (1967); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252, 256 (1983).

judiciary in cases of this sort begins and ends with assuring that the * * * regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll,* 389 U.S. 299, 307 (1967).

The Supreme Court has set forth the standard by which the validity of regulations will be determined:

In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute.

*National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 477 (1979); see also *United States v. Vogel Fertilizer Co.,* 455 U.S. 16 (1982); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252, 257 (1983).

The Supreme Court has upheld regulations which have a reasonable basis in the statutory history, even where the taxpayer's challenge to a regulation's policy had "logical force". *Fulman v. United States,* 434 U.S. 528, 536 (1978); see also *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. at 488. The Supreme Court also indicated in *National Muffler Dealers Association, Inc.,* 440 U.S. at 488, that a taxpayer "needs more than a plausible policy argument to prevail * * *. * * * The choice among reasonable interpretations is for the [Secretary], not the courts." See also *Fulman v. United States,* 434 U.S. at 533; *Bingler v. Johnson,* 394 U.S. 741, 749-750 (1969), (quoting *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948)).

If a regulation is found to be in conflict with the statute, the regulation is invalid to that extent. *Citizen's National Bank of Waco v. United States,* 417 F.2d 675, 679 (5th Cir. 1969); *Arrow Fastener Co. v. Commissioner,* 76 T.C. 423, 430 (1981). We must invalidate a regulation if the Secretary has "usurp[ed] the authority of Congress by adding restrictions to a statute which are not there." *Estate of Boeshore v. Commissioner,* 78 T.C. 523, 527 (1982). However, we must give defer-

ence and effect to the temporary regulation if it is not plainly inconsistent with its corresponding statute and it implements a congressional mandate in a reasonable way. *Allen Oil Co. v. Commissioner,* 614 F.2d 336, 340 (2d Cir. 1980).

The position and requirements set forth in section 1.404(b)-1T, Temporary Income Tax Regs., are not unreasonable and are consistent with the clear congressional intent expressed in the legislative history of section 404. The purpose of this temporary regulation is to implement Congress' continuing efforts to address timing distortions that inherently arise between current deductions taken for delayed compensation payments made by accrual method employers and the delayed inclusions of these payments in income by cash method employees.

As mentioned earlier, the Revenue Act of 1978 extended the deferred compensation deduction-timing rules to independent contractors and broadened the definition of the types of methods or arrangements of compensation or employer contributions covered by section 404(b). At that time the committee reports specifically noted that, under the prior law, the rules did "not generally apply to an accrual basis taxpayer who defers payment of compensation until after the year of accrual, where the amount payable cannot be determined exactly until the later year (e.g., yearend bonuses which are computed as a percentage of pre-tax profits)." H. Rept. 95-1445, 1978-3 C.B. (Vol. 1) 235; S. Rept. 95-1263, 1978-3 C.B. (Vol. 1) 371. However, in these same committee reports, both the House and the Senate clearly recognized that the timing of such payments affects their treatment. The committee reports explained that the deduction-timing rules are not intended to apply to normal yearend compensation accruals to unrelated persons which are paid *within a reasonable time* after the close of the taxable year. "Under the bill, amounts of compensation deferred under an employment contract or year-end bonuses declared by a corporate board of directors, but not paid within a reasonable period of time after the close of the taxable year, would be subject to the deduction-timing rules of sec. 404 to the extent that another Code provision * * * does not operate to deny the deduction." H. Rept. 95-1445, 1978-3 C.B. (Vol. 1) 236; S. Rept. 95-1263, 1978-3 C.B. (Vol. 1) 372.

Again in 1984 the deferred compensation deduction-timing rules were extended to welfare benefits (other than compensation). The House Ways and Means Committee was concerned that an employer might promise to provide an employee or independent contractor with a benefit sometime in the future and, even though the benefit plan or method was not funded, might claim a deduction before the benefit was provided to the employee or independent contractor. The committee was concerned about any uncertainty over the application of deduction-timing rules with respect to benefits and deferred compensation to independent contractors.

> The committee wishes to emphasize that the special rules governing employer deductions with respect to funded welfare benefit plans, deferred compensation, and other deferred benefits, are provided in lieu of the general deduction-timing rules of the Code relating to compensation and that their applicability should be carefully considered in all cases involving the timing of deductions with respect to compensation for services.

H. Rept. 98-432, 1282, 1283 (1984). The Senate had no comparable provision to that considered by the House.

The conference committee adopted the House provision with certain exceptions. The conference committee specifically discussed a 2½-month period as a time interval for defining a plan or method of deferred compensation. "[T]he conferees intend that payment of bonuses or other amounts within 2½ months after the close of the taxable year in which significant services required for payment have been performed is not to be considered a deferred compensation or deferred benefit plan." H. Conf. Rept. 98-861, at 1160 (1984), 1984-3 C.B. (Vol. 2) 414.

Petitioner argues that Congress intended to create a safe harbor for employers who made payments within the 2½-month period but not to create an adverse presumption concerning payments made beyond that period. However, our reading of the House Ways and Means Committee report and the conference report together leads us to conclude that the temporary regulations at issue are not inconsistent with the statute and its legislative history and indeed reasonably carry out the legislative intent.

The House of Representatives directly instructed the Secretary to prescribe rules for an exception from the application of the deduction-timing rules for accrued compensation

H. Rept. 98-432, *supra* at 1284. The House initially contemplated rules even more stringent than just "a brief time". H. Rept. 98-432 went on to state that, even if such payments were made within a brief period of time after the close of the taxable year, a compensation arrangement would still "be subject to the deduction-timing rules of section 404 unless the delay is consistent with typical payroll practices or is attributable to a temporary shortage of funds which could not reasonably be expected". *Id.* The House intended all such payments to be subject to the deduction-timing rules of section 404, even those that fall within "a brief period of time" unless the employer could justify even a brief delay. It was against this background that the conference committee then introduced the 2½-month period and the intention to create a safe harbor. H. Conf. Rept. 98-861, 1984-3 C.B. (Vol. 2) 414. While the 2½-month period was not added to the statutory language, the conference committee clearly indicated its intention that payments made within that 2½-month period would not be considered a deferred compensation or deferred benefit plan. The Secretary has faithfully respected this legislative intention and has issued a temporary regulation under which payments made within the 2½-month period are excluded from the deduction-timing rules of section 404. Section 1.404(b)-1T, A-2(c), Temporary Income Tax Regs., 51 Fed. Reg. 4322 (Feb. 4, 1986) provides that:

A plan, or method or arrangement, shall not be considered as deferring the receipt of compensation or benefits for more than a brief period of time after the end of the employer's taxable year to the extent that compensation or benefits are received by the employee on or before the end of the applicable 2½ month period. Thus, for example, salary under an employment contract or a bonus under a year-end bonus declaration is not considered paid under a plan, or method or arrangement, deferring the receipt of compensation to the extent that such salary or bonus is received by the employee on or before the end of the applicable 2½ month period.

Petitioner, however, complains about the presumption in section 1.404-1T, A-2(b)(1), Temporary Income Tax Regs., 1.404(b)-1T, A-2(b)(1), 51 Fed. Reg. 4321 (Feb. 4, 1986) that payments made beyond the 2½-month period are subject to the deferred compensation deduction-timing rules. However, the presumption can be rebutted. Payments made after the expiration of the 2½-month period may also be excluded from

the deduction-timing rules of section 404 if the facts and circumstances so warrant, as described in section 1.404(b)-1T, A-2(b)(2), Temporary Income Tax Regs., which will be discussed later in this opinion.

We do not agree with petitioner's contention that the temporary regulation is an impermissible bright-line test. A case-by-case approach has been included in the regulation to remove certain arrangements from the application of the 2½-month period. The temporary regulation does allow for an evaluation of the entire compensation arrangement, although the timing of payments remains the primary focus. Despite petitioner's arguments about considering the nature of the plan or method of compensation rather than just the time of payments, Congress has made clear that *any* plan or method having the effect of deferring receipt of compensation is subject to section 404. It is difficult, if not impossible, to discuss deferring receipt of compensation without focusing on the time of payment.

We also reject petitioner's contention that the case at hand is similar to that in *Minahan v. Commissioner,* 88 T.C. 492 (1987). We held, in that case, that the Secretary's procedural regulation issued under section 7430 attempted to impose a condition without statutory authority. Section 7430 permits a taxpayer to recover reasonable litigation costs if he prevails in a judicial proceeding and demonstrates that respondent's position was unreasonable. Section 7430(b)(2) provides that a taxpayer is not entitled to such a recovery if he did not exhaust the administrative remedies available to him within the Internal Revenue Service. In interpreting this statute, the Secretary issued section 301.7430-1(b)(1)(i)(B), Proced. and Admin. Regs., that stated that a taxpayer has not exhausted administrative remedies unless he agrees to extend the period of limitations for assessment of tax pursuant to section 6501(c)(4) if necessary to provide the Appeals Office a reasonable time to consider the tax matter.

The taxpayer in *Minahan v. Commissioner, supra,* cooperated fully with respondent's audit examination. He pursued all administrative avenues for relief, but he did not agree to extend the period of limitations as directed by section 301.-7430-1(b)(1)(i)(B), Proced. and Admin. Regs. Respondent contended that the taxpayer, thus, was not entitled to recover

litigation costs because he failed to satisfy the regulation's requirements. This Court held the requirement for the extension of the period of limitations invalid. There was no statutory authority for this condition. Congress could have chosen to impose such a requirement but did not. We held that this regulation was an attempt to legislate and thus exceeded the bounds of an interpretive regulation.

However, the situation presented by petitioner is unlike that in *Minahan v. Commissioner, supra.* Petitioner's situation is more akin to that addressed in *United States v. Correll,* 389 U.S. 299 (1967), in which the Supreme Court found that the Secretary had to establish a bright-line rule concerning the definition of "away from home" expenses deductible under section 162(a)(2), because the case-by-case approach would have resulted in wasteful litigation and continuing uncertainty. Here Congress expected and directed the Secretary to formulate regulations to implement its intent to minimize timing distortions with respect to current deductions and delayed inclusions in income. The Secretary did so by adopting the 2½-month period specifically discussed by the conference committee. This 2½-month period was a means of expressing, in specific terms, the general congressional directive in the legislative history of "a brief period of time" and of avoiding uncertainty in the application of section 404(b).

In certain cases, statutory language is "so general * * * as to render an interpretative regulation appropriate." *Helvering v. R.J. Reynolds Co.,* 306 U.S. 110, 114 (1939); *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. at 476; *United States v. Vogel Fertilizer Co.,* 455 U.S. at 25-26. Although improvements and variations can usually be made to a statute and its regulations, "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." *United States v. Correll,* 389 U.S. at 307, (quoting *Commissioner v. Stidger,* 386 U.S. 287, 296 (1967)). The language of section 404(b) is not self-defining, but sets up the general framework for minimizing timing distortions by including any plan, method, or arrangement that has the effect of deferring receipt of compensation. This framework, as explained and amplified in the committee reports, supports the specific requirements included in the temporary regulation. In this case, we conclude that the Secretary has not inappropri-

ately added conditions to or gone beyond the statute. Under Congress' direction, the Secretary has drafted specific terms and requirements that, in a reasonable manner, interpret and carry out the general concepts embodied in the statute and legislative history.[8]

Thus, we hold that the temporary regulation is valid.

*Applicability of Temporary Regulation to Petitioner's Yearend Bonus Payments*

In the alternative, petitioner argues that if section 1.404(b)-1T, Temporary Income Tax Regs., is valid, petitioner has established facts and circumstances sufficient to remove petitioner's deferred yearend bonus payments from application of the 2½-month period. Respondent argues that petitioner has failed to establish facts and circumstances that would render the temporary regulation inapplicable to petitioner's bonus payment method.

Having determined that section 1.404(b)-1T, Temporary Income Tax Regs., is valid, we must now decide whether petitioner has rebutted the presumption that section 404 applies to its deferred bonus payments.

The temporary regulation provides that:

The taxpayer may rebut the presumption * * * only by setting forth facts and circumstances the preponderance of which demonstrates that it was impracticable, either administratively or economically, to avoid the deferral of the receipt by an employee of the amount of compensation or benefits beyond the applicable 2½ month period and that, as of the end of the employer's taxable year, such impracticability was unforeseeable. For example, the presumption may be rebutted with respect to an amount of compensation to the extent that receipt of such amount is deferred beyond the applicable 2½ month period (i) either because the funds of the employer

---

[8]Petitioner has also made the argument that the Secretary's failure to adhere to his customary procedure of issuing final regulations, after a notice and comment period, renders the temporary regulation invalid. Although we sympathize with petitioner's frustration with the delay in finalizing proposed and temporary regulations, we cannot agree with petitioner's assertion that, since the Secretary has not issued final regulations to amended sec. 404(b) within 5 years of the amending legislation, the regulation's procedural validity has been so undermined as to require a total disregard of the temporary regulation at issue. Petitioner recognizes that sec. 7805(e), which provides that any temporary regulation must be issued as a proposed regulation, with notice and comment procedures, and shall expire within 3 years after the date of issuance, is not applicable in this case. It is applicable only to regulations issued after the effective date of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342. No inferences as to whether or not earlier regulations are valid should be drawn from the amendment of sec. 7805(e).

were not sufficient to make the payment within the 2½ month period without jeopardizing the solvency of the employer or because it was not reasonably possible to determine within the 2½ month period whether payment of such amount was to be made, and (ii) the circumstance causing the deferral described in (i) was unforeseeable as of the close of the employer's taxable year. Thus, the presumption with respect to the receipt of an amount of compensation or benefit is not rebutted to the extent it was foreseeable, as of the end of the employer's taxable year, that the amount would be received after the applicable 2½ month period. For example, if, as of the end of the employer's taxable year, it is foreseeable that calculation of a year-end bonus to be paid to an employee under a given formula will not be completed and thus the bonus will not be received (and in fact not received) by the end of the applicable 2½ month period, the presumption that the bonus is deferred compensation is not rebutted. [Sec. 1.404(b)-1T, A-2(b)(2), Temporary Income Tax Regs., 51 Fed. Reg. 4391 (Feb. 4, 1986).]

Petitioner argues that the facts and circumstances of its method of accruing and paying yearend bonuses demonstrate that it was both administratively and economically impracticable to avoid the deferral of the bonus payments. Petitioner says it was administratively impracticable to pay bonuses within 2½ months after the close of its fiscal year because the exact dollar amount of the bonus for a given year was not determined until the audit of petitioner's books and records. According to petitioner, this audit normally is not completed until May, approximately 4 months after the end of the taxable year for which the bonus is determined. Petitioner also says that the payment of the bonuses within 2½ months of the end of the taxable year was also economically impracticable due to the cash-flow cycle of petitioner's business. Petitioner characterizes the additional requirement of unforeseeability in the temporary regulation as "an impermissible attempt by respondent to legislate rather than apply the law enacted by Congress".

Under section 1.404(b)-1T, A-2(b)(2), Temporary Income Tax Regs., a taxpayer must demonstrate that avoiding deferral of receipt of compensation was either administratively or economically impracticable and that the facts and circumstances causing the impracticability were unforeseeable. The parties in this case have stipulated that the amount of the bonus payments was ascertainable at the end of petitioner's fiscal year ended January 31, 1986. Thus, we do not believe that it was administratively impracticable to avoid deferral, despite petitioner's assertion that its final audit was not

completed until May. Although petitioner has a plausible argument regarding the economic impracticability of avoiding the deferral of receipt of bonus payments because of its cash-flow cycle, the parties have also stipulated that the deferral was foreseen. The requirement for showing the unforeseeability of the economic impracticability that delayed payments is in keeping with Congress' focus on timing distortions. The employer's being able to foresee monetary or administrative problems and thus to control the taking of current deductions and the delaying of receipt of compensation payments is exactly the type of timing distortion Congress was addressing and seeking to restrict.

Although petitioner has maintained its system of bonus payments for at least 17 years, its plan, method, or arrangement of employer contributions or compensation has the effect of deferring receipt of compensation. Thus, petitioner's bonus payment method represents exactly the type of arrangement Congress sought to bring under section 404(b) and to make subject to the deferred compensation deduction-timing rules of section 404. Petitioner deducts bonus payments when accrued but does not make actual payments until up to a year later. In fact, petitioner may be taking deductions currently for payments that will never be made. An employee may leave his or her employment with the company prior to payment, which would disqualify the employee from ever receiving that payment.[9] Congress and the Secretary are not seeking to permanently disallow a deduction for deferred bonus payments, but merely to match the deduction in the same taxable year as the corresponding inclusion of the payments into income by the employees. The Secretary reasonably accomplishes that legislative purpose in section 1.404(b)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4321 (Feb. 4, 1986).

To the extent that petitioner is relying on the permanent regulation, section 1.404(b)-1, Income Tax Regs., which does not contain the unforeseeability requirement, we point out that that provision does not reflect either the 1978 or the 1984 amendments to section 404. These amendments and the

---

[9]As noted in the facts, petitioner had 34 employees on Jan. 31, 1986, but paid bonuses to only 33 employees because one employee left the company prior to the date of payment. However, in this instance, the entire $137,000 amount deducted was in fact paid out during petitioner's fiscal year ending Jan. 31, 1987.

legislative history discussed above show that *any* plan, method, or arrangement that has the effect of deferring receipt of compensation comes within the deferred compensation deduction-timing rules of section 404. A method or arrangement under which it is foreseen, and here known from the outset, that receipt of compensation will be deferred, clearly comes within the statute and regulations.

Having concluded that the unforeseeability requirement is congressionally mandated and appropriately interpreted by the Secretary in this temporary regulation, we find that petitioner has not presented sufficient facts and circumstances to overcome the presumption that the deferred compensation deduction-timing rules of section 404 apply to petitioner's arrangement. Although petitioner may find it administratively and economically impracticable to avoid the deferral of these bonus payments, it is the very foreseeability of petitioner's difficulties that led to the development of petitioner's deferral method. And it is the development of such deferral methods and arrangements that Congress and the Secretary addressed through section 404 and the temporary regulations rather than the general deduction-timing rules (i.e., normal rules of accrual accounting) of the Internal Revenue Code.

In summary, we hold that section 1.404(b)-1T, Temporary Income Tax Regs., is a valid temporary regulation, that petitioner has not brought itself within any exception thereto, and that the temporary regulation is applicable to petitioner's yearend bonuses, accrued as of the end of its fiscal year ending January 31, 1986, but not paid to employees within the 2½-month period thereafter. In other words, petitioner's yearend bonuses are subject to the deferred compensation deduction-timing rules of section 404 rather than the normal rules of accrual accounting.

To reflect the above holding and the parties' concessions,

*Decision will be entered under Rule 155.*