T.C. Summary Opinion 2007-127


UNITED STATES TAX COURT


PAUL M. AND WANDA E. HARMON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11911-06S.              Filed July 26, 2007.


Wanda E. Harmon, pro se.

<u>Emily Giometti</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

   [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2001, the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Petitioners claimed deductions for a rental real estate loss of $68,796 for the taxable year 2001 that respondent denied, resulting in a deficiency in petitioners' income tax for the year of $18,937. The sole issue for decision is whether petitioner-wife was a real estate professional and thus not subject to the passive activity loss rule of section 469(c)(2) and (4).[2]

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Paul M. Harmon (Mr. Harmon) and Wanda E. Harmon (petitioner or Mrs. Harmon) resided in Oakland, California.[3]

With a background in English and a master's degree in counseling, petitioner was employed by both Golden Gate

---

[2] The two other adjustments contained in the notice of deficiency are mechanical in nature and are dependent on the final calculation of petitioners' adjusted gross income.

[3] Although Mr. and Mrs. Harmon both signed the petition, as only Mrs. Harmon appeared in person at trial and as this case solely concerns Mrs. Harmon's status as a real estate professional, we refer to Mrs. Harmon alone as petitioner. We refer to Mr. and Mrs. Harmon jointly as petitioners.

University and The Casey Family Outreach Program (Casey) in 2001.[4]

Petitioner's work with Casey focused on working with at-risk youths in the foster care system by developing Casey's tutoring program. Petitioner also worked to find employment for the youths involved in the Casey program. She attended regular staff meetings, visited group homes, and was available on call. Petitioner's job description indicates that her position was a "full-time, exempt position that at times [required] workweeks in excess of 40 hours". According to Casey's payroll records, petitioner worked a total of 2,080 hours in 2001.

In addition to working for Casey, petitioner worked for Golden Gate University's graduate school of business as an adjunct professor. She developed and taught an online course for the spring and summer semesters where the students were responsible for at least one semester project, a midterm examination, and a final examination.

Petitioners own a residential property on Lyon Street in Oakland, California (the Lyon Street property or the property), which they bought in the late 1980s and rent out, often to low-income tenants. The property is a fourplex containing two one-bedroom apartments, one two-bedroom apartment, and one three-

---

[4] "Casey Family Programs' mission is to provide and improve—and ultimately to prevent the need for—foster care." Http://www.casey.org/AboutCasey/.

bedroom apartment. It also has a laundry room with a coin-operated washer and dryer. Petitioner performed the majority of the work on the property in order to minimize expenses. She would show the apartments, process rental applications, collect rent, and perform general maintenance work.

Petitioners claimed deductions on their 2001 Federal income tax return for a rental real estate loss of $68,796 relating to the Lyon Street property. Respondent determined that this loss resulted from a passive activity and disallowed it.[5] Petitioners argue that, as a real estate professional, Mrs. Harmon is not subject to the passive activity loss rules normally applicable to rental property. We disagree and consequently hold for respondent.

Discussion

A. <u>Burden of Proof</u>

Taxpayers are permitted deductions only as a matter of legislative grace, and only as specifically provided by statute. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). In addition, the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving those determinations wrong. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). The burden of proof may, under certain

---

[5] Respondent does not dispute that petitioners have substantiated the claimed expenses.

circumstances, shift to the Commissioner under section 7491(a) if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's income tax liability. See Higbee v. Commissioner, 116 T.C. 438, 441 (2001). However, the burden of proof remains on petitioners in this case as they have neither alleged that section 7491(a) is applicable nor introduced sufficiently credible evidence with respect to the factual issues relevant to ascertaining their income tax liability. See id.

B.  Losses From Rental Activities

Section 469 generally disallows for the taxable year any passive activity loss. Sec. 469(a). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity, such as petitioners' renting out the Lyon Street property, is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2) and (4). Under section 469(c)(7)(B), however, the rental activity of a taxpayer in a real property trade or business (real estate professional) is not per se a passive activity. Instead, it is treated as a trade or business and subject to the material

participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs. Petitioners argue that Mrs. Harmon is a real estate professional.

A taxpayer qualifies as a real estate professional and is not engaged in a passive activity if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). A trade or business includes being an employee. Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979); Fowler v. Commissioner, T.C. Memo. 2002-223. In the case of a joint return, the same spouse must satisfy each requirement. Sec. 469(c)(7)(B). In the present case, that means that petitioner must satisfy both requirements of section 469(c)(7)(B). Accordingly, we focus on her participation in the rental activity related to the Lyon Street property.

1. 750-Hour requirement

Petitioners' position is that Mrs. Harmon spent 774.5 hours on rental activities in 2001, thus exceeding the 750-hour requirement of section 469(c)(7)(B)(ii). "The extent of an individual's participation in an activity may be established by

any reasonable means."  Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).[6]  Although "reasonable means" is interpreted broadly, we have held that the phrase does not include a postevent "ballpark guesstimate".  See Fowler v. Commissioner, supra; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Despite having made use of a Palm Pilot during 2001--the pages of which could have been printed out and submitted for review--petitioners submitted two items to establish the amount of time Mrs. Harmon spent working on the property:  Calendar pages filled out by hand and a purported summary of the activities shown on the calendar.  Both items were compiled after petitioners had been asked by respondent to produce documentation in anticipation of trial.

Petitioner testified that she created the calendar by referring to entries in her Palm Pilot.  She compiled the summary by estimating how long she had spent on the activity.  For example, on one day, she had noted in her Palm Pilot that she painted.  This translated into a calendar entry of "painting all day" with a time of 10 hours noted on the summary; petitioner

---

[6]  Temporary regulations are entitled to the same weight as final regulations.  See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996); Truck & Equip. Corp. v. Commissioner, 98 T.C. 141, 149 (1992).

decided on the 10-hour figure because "she knew she had all day to do it" and because Home Depot opened at 7 o'clock.

We do not find petitioners' calendar or summary to be persuasive. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The summarization in particular appears to be more akin to the unacceptable ballpark guesstimates we have rejected in the past than it is to "reasonable means" that would establish that Mrs. Harmon actually spent 774.5 hours on real estate activities in 2001.

2. More than one-half of the personal services performed in trades or businesses by the taxpayer

Assuming, arguendo, that we were persuaded by petitioners' claim that Mrs. Harmon spent 774.5 hours on real estate activities in 2001, petitioners are still unable to satisfy the other portion of the test outlined in section 469(c)(7)(B) for treatment as a real estate professional. According to section 469(c)(7)(B)(i), petitioners have to prove that more than one-half of Mrs. Harmon's personal services performed in trades or businesses in 2001 were performed in real property trades or businesses. Petitioners are unable to do so.

Petitioners argue that Mrs. Harmon's other personal service commitments were sufficiently minimal so as to permit the 774.5 hours she claims to have spent on rental activities to constitute more than one-half of the personal services she performed in

2001, satisfying section 469(c)(7)(B)(i).  We disagree.  Although petitioner was contracted to perform--and was paid for--full-time employment with Casey, she argues that she worked only 8 hours per week.  The evidence, however, contradicts petitioners' claim.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (stating "we are not required to accept the self-serving testimony of petitioner * * * as gospel.").

The job description for petitioner's position at Casey specifically states that her position at times required workweeks in excess of 40 hours.  Her employment contracts were for full-time employment during the relevant time periods.  Even Casey's payroll records indicate that petitioner worked a full-time schedule:  2,080 per year is the equivalent of 40 hours per week.  Although it may be possible that she did not work a 40-hour week each week as documented by payroll--professional salaried employees often are not on a fixed schedule yet something must be entered into the accounting software--it is not reasonable to assume that a nonprofit organization would pay anyone in excess of $55,000 per year plus benefits for working only 8 hours per week.[7]  The 2,080 hours Casey's payroll records show far exceed the 774 hour maximum petitioner would have been able to work and still meet the test outlined in section 469(c)(7)(B).

---

[7]   That works out to approximately $132 per hour.

In addition, although she minimizes the amount of time she spent working for Golden Gate University, teaching even an on-line version of a course must take some time, and this time would have to be factored into any analysis of petitioner's performance of personal services in 2001.

C.  Conclusion

Because petitioner did not qualify as a real estate professional, we need not consider whether she materially participated in the rental activities.  See sec. 469(c)(7)(B).

Further, we note that section 469(i) provides an exception to the general rule that passive activity losses are disallowed. A taxpayer who "actively [participates]" in a rental real estate activity can deduct a maximum loss of $25,000 per year related to the activity.  Sec. 469(i)(1) and (2).  This exception is fully phased out, however, when adjusted gross income (AGI) equals or exceeds $150,000.  Sec. 469(i)(3)(A), (E).  Petitioners' 2001 AGI exceeded $150,000.  Accordingly, they cannot deduct any amount of the passive activity loss in 2001.  But see sec. 469(b) (explaining that disallowed losses may be treated as a deduction allocable to the activity in a succeeding taxable year).

Respondent's determination is sustained, and to reflect our disposition of the disputed issue,

Decision will be entered

for respondent.