T.C. Summary Opinion 2012-30

UNITED STATES TAX COURT

DENNIS MANALO AND NERISSA MANALO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17261-10S.                    Filed April 9, 2012.

<u>Lawrence T. Ullmann</u>, for petitioners.

<u>Melissa C. Quale</u> and <u>Tyler N. Orlowski</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in, and accuracy-related penalties with respect to, petitioners' Federal income taxes as follows:

| Year | Deficiency | Penalty - Sec. 6662(a) |
|------|-----------|------------------------|
| 2007 | $21,561.00 | $4,312.20 |
| 2008 | 25,461.00 | 5,092.20 |

After concessions by petitioners,[2] the issues before the Court are as follows:

(1) Whether petitioners are entitled to deduct rental real estate losses after passive limitations for 2007 and 2008 of $74,518 and $87,491, respectively; and

(2) whether petitioners are liable for accuracy-related penalties under section 6662(a).

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the years in issue, all Rule references are to the Tax Court Rules of Practice and Procedure, and all monetary amounts are rounded to the nearest dollar.

[2]  Petitioners concede that they are not entitled to the following deductions claimed on their Schedule C, Profit or Loss From Business, for 2007:  (1) $20,000 for repairs and maintenance; (2) $10,872 for mortgage interest; and (3) $46,536 for other expenses.  Petitioners also concede that they are not entitled to the following deductions claimed for 2008:  (1) $30,959 for home mortgage interest claimed on their Schedule A, Itemized Deductions; and (2) $12,508 for depreciation and sec. 179 expense claimed on their Schedule C.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of settled issues, stipulation of facts, supplemental stipulation of facts, and accompanying exhibits. Petitioners resided in the State of California when the petition was filed.

During the years in issue petitioners Dennis Manalo and Nerissa Manalo owned two residential rental properties that gave rise to rental real estate losses, as described infra. The first property was located on Prosperity Street in Mountain House, California (Mountain House property) and the second was located on 16th Avenue in San Francisco, California (16th Avenue property). Petitioners sometimes arranged for others to provide services in connection with their rental properties which services included showing the properties, collecting rent, and making repairs. Petitioners, however, were always responsible for approving repair expenditures, deciding on rental terms, and approving new tenants.

At all times relevant, Mrs. Manalo was licensed by the State of California as a real estate broker. In addition to helping manage petitioners' rental properties during the years in issue, Mrs. Manalo worked as a designated real estate broker performing services related to nonrental real estate activities.

Petitioners did not maintain a contemporaneous time log that detailed their real estate activities. Mrs. Manalo, however, did maintain desk calendars during the years in issue (calendars) on which she recorded various appointments and tasks associated with both her rental and nonrental real estate activities.

Petitioners timely filed a joint Federal income tax return for each year in issue. Petitioners attached to each of those returns a Schedule E, Supplemental Income and Loss, on which they claimed rental real estate losses in respect of both the Mountain House property and the 16th Avenue property.

In 2009 respondent examined petitioners' 2007 and 2008 Federal income tax returns. During the course of the examination petitioners submitted the calendars and a log of hours reconstructed on the basis of the notations in the calendars (original log) to respondent's revenue agent. The original log reported 89 hours and 72 hours spent on the Mountain House and 16th Avenue properties, respectively, in 2007. The original log also reported 6 hours and 60 hours in connection with the same two properties, respectively, for 2008.

Mrs. Manalo subsequently submitted three revised versions of the original log (revised logs) to respondent over a two-year period, the final version of which was submitted just before trial. The estimates on the revised logs included 113 hours and 96 hours performed in connection with the Mountain House and 16th Avenue

properties, respectively and a total of 271 hours reported in a new entry entitled "Admin and Field" for 2007. The estimates on the revised logs also included 59 hours and 197 hours performed in connection with the same properties, respectively, and a total of approximately 253 hours reported in the new "Admin and Field" entry for 2008.

The estimates on the revised logs are based on emails and archived documents that were not offered into evidence by petitioners.

## Discussion

### A. Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of showing that those determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies, nor have they established their compliance with its requirements. Accordingly, petitioners bear the burden of proof. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

B.  Section 469

Section 469 generally disallows for the taxable year any passive activity loss. Sec. 469(a).  A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A "passive activity" includes, with certain exceptions, any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).

There are two primary exceptions that operate to allow the current deductibility of losses associated with rental activities that ordinarily would be disallowed under section 469.  Moss v. Commissioner, 135 T.C. 365, 368 (2010).

1.  Real Estate Professional

The first exception is found in section 469(c)(7).  Under that paragraph, the rental activities of taxpayers in real property trades or businesses (so-called real estate professionals) are not treated as per se passive activities but rather as trade or business activities, subject to the material participation requirements of section 469(c)(1).  Sec. 469(c)(7); see also sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional whose rental activities are not deemed per se passive if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). For joint filers, such as petitioners, the same spouse must satisfy each of the above conjunctive requirements. Id.

We have held, however, that even if a taxpayer would otherwise qualify as a real estate professional under section 469(c)(7)(B), the taxpayer must still "materially participate" in the taxpayer's rental real estate activities in order to deduct losses associated with those activities. See Perez v. Commissioner, T.C. Memo. 2010-232; see also Shiekh v. Commissioner, T.C. Memo. 2010-126.

In general, material participation is defined as regular, continuous, and substantial involvement by an individual in the operations of an activity.[3] Sec. 469(h)(1). The Commissioner's temporary regulations generally provide seven

---

[3] An individual must establish that he or she materially participated in each of the rental activities unless the individual makes an election to treat all interests in rental real estate as a single rental activity. Sec. 1.469-9(e)(1), Income Tax Regs. Petitioners concede they made no such election.

"safe-harbor" tests in which an individual will be treated, for purposes of section 469 and the regulations thereunder, as materially participating in a rental activity. See sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).[4] Under section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, an individual may meet the material participation requirement by demonstrating that the individual participated in the rental activity for more than 100 hours during the taxable year and that such individual's participation is not less than the participation of any other individual (including individuals who are not owners of interests in the activity) during that year.

For purposes of the material participation requirement, participation by an individual's spouse can be added to the participation of the individual. Sec. 469(h)(5). Individuals may establish the extent of their participation in an activity by "any reasonable means". Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Although "reasonable means" is interpreted broadly, we have held that the phrase does not include a postevent "'ballpark

---

[4] Temporary regulations are entitled to the same weight as final regulations. See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), aff'd, 78 F.3d 795 (2d Cir. 1996); Truck & Equip. Corp. v. Commissioner, 98 T.C. 141, 149 (1992).

guesstimate'". <u>Speer v. Commissioner</u>, T.C. Memo. 1996-323 (quoting <u>Goshorn v. Commissioner</u>, T.C. Memo. 1993-578).

Petitioners' position is that Mrs. Manalo qualified as a real estate professional and materially participated in petitioners' rental real estate activities during the years in issue.[5] We find overall, however, that the means by which petitioners estimated the time they spent performing services in their rental real estate activities were not reasonable within the meaning of section 1.469-5T(f)(4), Temporary Income Tax Regs., <u>supra</u>.

Petitioners rely on section 1.469-5T(a)(3) of the temporary regulation to establish Mrs. Manalo's material participation, alleging that Mrs. Manalo spent more than 100 hours performing personal services in each of petitioners' rental real estate activities and that her participation is not less than that of any other individual. To support their position, petitioners rely on Mrs. Manalo's calendars, which according to petitioners were prepared contemporaneously with the appointments noted therein. In addition, petitioners rely on the original log, a reconstructed schedule of hours loosely based on the notations in the calendars.

---

[5] The parties agree that Mr. Manalo did not qualify as a real estate professional under sec. 469(c)(7)(B) during the years in issue.

Those documents, however, do not establish that Mrs. Manalo spent more than 100 hours in each of petitioners' rental real estate activities.

To push themselves over the 100-hour hurdle, petitioners introduced at trial three revised logs, including a last-minute log purporting to be a reconstruction of the hours of services Mr. Manalo performed with respect to the rental activities. The estimates in these revised logs, however, are uncorroborated and unreliable. The revised logs were prepared at various instances over a two-year period after the conclusion of respondent's examination and are, according to petitioners, based on emails and archived documents. Those emails and archived documents, however, were never introduced into evidence at trial. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).

Petitioners' revised logs draw further skepticism with respect to reliability in that the hours reported appear excessive in relation to the work performed and many descriptions do not specify the rental property that the hours relate to or who performed the services described. The estimates on the revised logs appear to be more akin to the unacceptable ballpark guesstimates that we have rejected in the

past.  See Speer v. Commissioner, T.C. Memo. 1996-323.  Moreover, although we found petitioners to be generally credible, the Court is not bound to accept as gospel the unverified and undocumented testimony of a taxpayer.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Therefore, we conclude that petitioners have failed to satisfy the safe harbor test provided in section 1.469-5T(a)(3), Temporary Income Tax Regs., supra. [6]

In sum, on the record before us, we are unable to conclude that petitioners have proven that Mrs. Manalo materially participated in either of petitioners' rental real estate activities.[7]  Accordingly, we hold that petitioners are not entitled to deduct their rental real estate losses for 2007 or 2008 on the basis of the real estate professional exception provided by section 469(c)(7).[8]

---

[6] Although never asserted by petitioners at trial or on brief, we conclude, based on all the facts and circumstances, that petitioners have also failed to satisfy the remaining safe harbor tests provided in sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

[7] Because we hold that petitioners did not materially participate in their rental real estate activities, we need not discuss the remaining requirements under sec. 469(c)(7)(B), e.g., the 750-hour requirement.

[8] We note, however, that surplus passive activity losses disallowed in previous years may be available to offset other income in later years if a taxpayer's "entire interest in any passive activity" is "dispose[d] of" in a taxable transaction. Sec. 469(g).

2.  Offset for Rental Real Estate Activities

The second exception that operates to allow the current deductibility of losses associated with rental activities ordinarily disallowed under section 469, albeit a potentially limited exception, is found in section 469(i).  Even if a taxpayer's rental real estate activities are treated as passive activities, a portion of the passive activity losses associated with those activities may still be allowed under section 469(i)(1).  Thus, a taxpayer who "actively" participates in a rental real estate activity may deduct a maximum loss of $25,000 per year related to the activity.  See sec. 469(i)(1) and (2).  This exception is subject to phaseout when a taxpayer's adjusted gross income (determined without regard to any passive activity loss) exceeds $100,000 and phases out entirely when adjusted gross income reaches $150,000 or more.  Sec. 469(i)(3)(A); Moss v. Commissioner, 135 T.C. at 371.

Active participation is a lower standard than material participation and can be satisfied without regular, continuous, and substantial involvement in an activity.  See Madler v. Commissioner, T.C. Memo. 1998-112.  The active participation standard is satisfied if the taxpayer participates in a significant and bona fide sense in making management decisions (such as approving new tenants,

deciding on rental terms, approving capital expenditures) or arranging for others to provide services such as repairs. See id.

It is clear that petitioners own the Mountain House property and the 16th Avenue property and that they were responsible for making all management decisions and in fact made such decisions during the years in issue.[9] We conclude that petitioners satisfied the active participation standard in 2007 and 2008, and thus are entitled to deduct a portion of the losses from their rental real estate activities pursuant to section 469(i) subject, however, to the phaseout calculation under section 469(i)(3). We leave for the parties to determine, as part of their computation under Rule 155, the amount of loss, if any, petitioners are entitled to deduct after the phaseout calculation is made with respect to each year in issue.

## C. Penalties

Respondent contends that petitioners are liable for the accuracy-related penalty under section 6662(a) and (b)(2) for a substantial understatement of income tax with respect to the years in issue.

---

[9] Petitioners arranged for others to provide services with respect to their rental properties such as showing the properties, collecting rent, and making repairs, but petitioners themselves were always responsible for approving repair expenditures, deciding on rental terms, and approving new tenants.

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment that is due to a substantial understatement of income tax. An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Respondent has satisfied his burden of production because the record demonstrates the presence of a substantial understatement of income tax attributable to, inter alia, the disallowed deductions conceded by petitioners. See supra note 2. Accordingly, petitioners bear the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the underpayment for which they acted with reasonable cause and in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446.

Petitioners have furnished no evidence or testimony to carry their burden with respect to any of the items conceded in the stipulation of settled issues. See supra note 2. Consequently, we hold that petitioners are liable for the accuracy-related penalty applicable to the conceded items.

We are convinced, however, that petitioners had reasonable cause to believe that Mrs. Manalo qualified as a real estate professional and materially participated in petitioners' rental real estate activities. It is clear that Mrs. Manalo devoted a great deal of time to her business as a real estate broker and made management decisions in connection with petitioners' rental activities. Petitioners provided calendars that were generally credible and prepared contemporaneously with the appointments noted therein. Moreover, petitioners provided credible testimony at trial regarding their rental real estate activities and much of that testimony was

corroborated, not only through documentary evidence, but also by the testimony of respondent's witnesses. Petitioners, however, simply failed to meet their burden of proof. Therefore, we decline to sustain the accuracy-related penalty with respect to those portions of the underpayments attributable to petitioners' rental real estate losses claimed on Schedules E for the years in issue.

## Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent not addressed herein, we conclude that those arguments irrelevant, moot, or meritless.

To give effect to the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.